Today's call for argument is the People v. McGee. Council? Good afternoon, Your Honors. It's a beautiful day. Sorry you have to be here and not be out playing golf. This is the case of People v. Deshaun McGee. He would like, Your Honors, to reverse his conviction. We are basing that upon the standard of insufficiency of the evidence and that the state failed to prove the defendant guilty beyond a reasonable doubt. And we are pointing to the significant facts of the not guilty verdicts by the jury in finding him not guilty of aggravated battery with a firearm and aggravated discharge of a firearm. They only found him guilty of unlawful possession of a firearm by a felon. Now, I admit that there is case law about inconsistent verdicts not being sufficient to overturn one verdict, and the state points it out also in their brief. But in terms of where you have one witness, and it's the only witness, and he has credibility problems, this court, there has to be at some point where the court takes over, this court takes over. The circuit court should have taken over at the beginning and directed the verdict. But at some point, the credibility problem with that witness has to come into effect. And what is that credibility problem with the state's witness in this case, Janelle Travis? His credibility problem is that after the shooting in this case, he was interviewed by the police, and he said he did not see or know anything what had occurred. His memory did not become better until 13 days later when he was cooling his heels in a county jail on a probation violation for federal eviction. And then at that time, looking for a deal, looking for help from… Is there any evidence about this deal? Is there any evidence of a deal? There is no evidence that he obtained a deal. Obtaining the deal and telling prosecutors what they want to hear in search of a deal is another thing. So telling the police something that he knows that they want to hear in search of some deal does not mean that he's telling the truth at the time. He's just telling them what he knows they want to hear. That he doesn't come out better later on is just a problem that he will see to be an injustice to him as opposed to what kind of injustice might be done to people that he talks about or says things about. Now, Travis testified that he saw my client, Deshaun McGee, shooting at the car and shoot more than four times at a car. The jury rejected that, and they're not guilty. He had testified that he saw Deshaun McGee give out a .357 Magnum and a revolver in my client's trailer. The problem with that is that he told the police officer that my client gave out three guns that night. So he gives these inconsistent stories, can't keep his stories straight, and it's just an indication of how he has been looking to make my client look out more guilty, and he was just making it up. He never did dispute, though, that guns were handed out, whether the number was correct. There was no evidence that what he said about somebody handing out guns happened. Well, my client presented a couple of witnesses who testified that that did not happen. His girlfriend and another friend, right? Right. People who would normally be with my client at the time, people who you normally would be with your wife, I would normally be with the lady I'm dating. It's not unusual to be with the people that you live with and associate with. Janelle Travis was just the person who lived across the street and who needed some help on a probation violation. Now, Travis also testified that Deshaun McGee gave him $100 or $200 to keep track and watch out for a red car that might have been in earlier and might have been involved in a potential break-in at the defendant's house. That's a kind of head-scratching thing, because $100, $200, just for watching out and you don't remember what it is, you don't remember whether you get it or not, you don't know, are you mad about not getting it? That just makes you sit around and say, well, what is he talking about? And why is that he's so uncertain about that number? That's a pretty large amount of money for just sitting and watching to see if a car comes. All you have to do is wander across the street and tell. And finally, the state finds it significant to Travis' credibility that he knew about the people inside Mr. McGee's trailer. But again, that's not all that difficult to know who's inside. He didn't have to be inside that trailer to know who was in there. He lived across the street. These are people who are known to be in that trailer. Some of them live there. Some of them come and visit all the time. All they had to do was be sitting around across the street looking out and say, oh, Travis came home with these people. Watched them go inside the trailer. All you have to do is watch them go inside and know who's inside. The idea that the only way he would know who was in that trailer was because he was inside, that's just not true. The state argues in its brief and says, Travis' testimony is positive and convincing. Except, again, it gets back to that guilty verdict in which Travis was saying he watched as my client, Mr. McGee, fired more than four shots at this car. Breaking the back window, hitting the passenger in the back of the head and causing severe injuries to that passenger. With those not guilty verdicts and this problem with this credibility, we would urge your honors to reverse my client's conviction. Are there no questions? I don't believe there are. Thank you, counsel. Counsel? May it please the court. Counsel, my name is Sharon Chanahan and I represent the people of the state of Illinois. I would like at this moment to introduce my new colleague to the appellate prosecutor's office. This is Ms. Neha Sharma. She just joined our office about two weeks ago. And I'm sure you'll be seeing a lot of her. I thought it interesting. Defense counsel begins this argument with his discussion of the inconsistent verdicts. And he says, there is some case law. Yes, there is some case law. By the United States Supreme Court and the Illinois Supreme Court. This is not just case law. This is a rationale that has been accepted in this state for a long time and that is unquestionable anywhere in the United States, as I said. In United States v. Powell, the United States Supreme Court dealt with this issue. And in People v. Jones, Illinois Supreme Court dealt with the concept of inconsistent verdicts. And they both held that they are not the basis for reversal. And here's why. This is what our United States Supreme Court says. Here's what our Illinois Supreme Court says. A jury could have concluded that the verdicts are just as likely to be lenient and help the defendant. And there is absolutely no reason to assume that an acquittal is the correct verdict. And you have to make that presumption in order to buy the defendant's argument. That they correctly found him not guilty. And then incorrectly found him guilty on the possession charge. So there's no way that in the defendant's brief he claims that the jury emphatically found that Travis lacked credibility. That's simply not the case. First of all, I think we need to consider whether these even are inconsistent verdicts. The jury could have... There was another man in the trailer that night that Travis saw the defendant give a gun to. He saw both men run outside with the guns. The jury certainly could have said, well, we know he had the guns. We know the defendant... And keep in mind, if the defendant has two guns or three guns in his closet, he's guilty of this offense. Because he is a convicted felon. And the charge is possession of a firearm by a convicted felon. So he didn't have to shoot anybody. If all he did was take those, to possess the guns. But if all that was seen was that he took them out and handed them to another person. And then those two, he and the other guy, went outside. And the jury says, we're not sure who fired that shot. Could have been the defendant. Could have been the other guy. I find him guilty of firing the gun. But by gosh, he had those guns in his house. Those are not inconsistent verdicts. The guns came from somewhere. And I think it is very reasonable that the jury said they couldn't have come from anywhere other than the defendant's house. I think it's important that in explaining inconsistent verdicts, it says a court cannot look for a rational explanation for jury leniency. Because leniency does not operate in a rational manner. So assuming if these are inconsistent verdicts, they're inconsistent verdicts. And to assume that the jury correctly found him not guilty of the more serious charges and found him guilty of this charge, that's just the way juries work. Maybe they felt something for him. And they don't have to have a good reason. And under the law of the United States Supreme Court and the Illinois Supreme Court, there is nothing wrong with inconsistent verdicts in this court. So it's certainly not reversed on that basis. In regard to our witness, Mr. Travis, I'd like to note that Mr. Travis, this is a trailer park off of Old Highway 51 south of Carbondale. And there's one road that leads into it, an only road. And Mr. Travis lived in the first trailer. He saw everybody that came and went. He told the defendant that he had seen a red car with a white top parked near the defendant's trailer a few days before the shooting. And the defendant asked him to take a lookout for that. Now, the defendant says, no, I didn't ask him to watch out for it. But he does admit that he did talk to Travis and tell him that someone had tried to kick in his door that day. So his only thing is that, but I didn't tell him to do anything about it. I didn't tell him to watch out for anybody. I just told him this happened. He also claims he wasn't upset about this. That's disputed not only by Mr. Travis, that's disputed by the defendant's girlfriend and by his friend, Ariel Cole. They all said he was upset about this. So it's not very surprising, since the defendant was upset about this attempted break-in a couple of days earlier, that he would ask the person that lives at the entrance to the mobile home park to keep an eye out for this car. And they went outside and took care of things. Now, the defendant says, Travis could easily have known those details about what was in the house. He didn't have to be in the house to know those things. Well, if he did, it was a really lucky guess. Because from his trailer, he certainly could not see inside the defendant's trailer. How would he have known that they were in the kitchen and food was being served? How would he know that the occupants of the trailer were the defendant, two women, some kids, and two men? And we know that's true, because the defendant, his girlfriend, and his friend, Ariel, all said that's who was in the trailer. This is simply knowing that they were eating, knowing that, I was trying to look up the name of the second man that took the gun and didn't find it right off the bat, but how did he know he was in the trailer? He didn't live there. He wasn't a regular guest there. The defendant didn't always have custody of his daughter, and yet his daughter was there that night. And she counts for one of the two children that was in the trailer that night. So he knew an awful lot of information about what was going on inside the defendant's trailer for someone who was not ever in it. Dealing with Travis's deal, the jury knew right off the bat that Travis was on federal probation, and they could certainly take that into account, but they were the ones to deal with his credibility. He testified, and it was not disputed, that he was not promised anything for his testimony. He was not offered a deal. He was not offered any consideration. He was not threatened by the police. He didn't even want to testify against the defendant. And he testified in trial that he did not initially tell the police what he'd seen because he was on probation and he didn't want to get in trouble. I think that's a pretty good reason that most people just want to lay low. And the defendant was his friend. Why would he want to falsely accuse his friend? Travis had nothing to lose and nothing to gain in testifying against the defendant. And I would say, even the fact the witness is a self-confessed criminal and expects leniency doesn't all by itself raise reasonable doubt. We have to also consider the victim in this case, who testified that as he was driving out of the building, he heard the other driver say, LP! LP! And the record reflects it. LP is the defendant. The driver's looking in the rearview mirror and seeing somebody behind him, and LP is the defendant. So I think that adds to the fact that the defendant was the person chasing them and shooting them and certainly establishes as moral evidence that he possessed a gun. Are there any questions? I don't believe so. Thank you, counsel. Counsel? If your honors have no other questions for me, I was going to have to get a specific result. I don't believe we do. Thank you, counsel. We appreciate the briefs and arguments of both counsel. We'll take this matter under advisement in court's adjournment.